UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**VINCE RUSSO and ROSE RUSSO,**

    **Plaintiffs,**

v.                                             Case No: 2:21-cv-893-SPC-DAB

**KNAUF GIPS KG, KNAUF PLASTERBOARD TIANJIN CO. LTD. and KNAUF NEW BUILDING SYSTEM (TIANJIN) CO. LTD.,**

    **Defendants.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** MOTION FOR SUMMARY JUDGMENT ON ISSUES PARTICULAR TO THIS CASE (Doc. 43)
>
> **FILED:** June 13, 2022
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED.**

Plaintiffs Vince and Rose Russo filed suit against the Knauf Defendants seeking, among other things, damages related to allegedly defective drywall the Knauf Defendants manufactured and placed into the stream of commerce, which was later

installed in thousands of homes; numerous homeowners and home builders sued. Previously, the cases were part of an extended Multidistrict Litigation proceeding ("MDL") which has since been largely resolved, and the individual cases have been transferred to the districts where the drywall was installed.[1]

The Knauf Defendants seek summary judgment on the Russo Plaintiffs' individual claims, arguing that the four-year statute of limitations bars these claims. Because the Court finds that the Russos were aware of issues with the drywall in their home more than four years prior to bringing a claim, their suit is barred. None of the potential exceptions to straight-forward application of the Statute apply. Accordingly, it is respectfully **RECOMMENDED** that summary judgment be **GRANTED** and this case be dismissed.

Defendants also argue that Plaintiffs' claims are barred by what they contend is Florida's subsequent purchaser doctrine. Because, for purposes of summary judgment, Defendants have failed to demonstrate that the doctrine applies in this case, it is **RECOMMENDED** that the motion be **DENIED** in this respect.

### I. BACKGROUND OF THIS CASE

The Russos own a house at 9800 Quinta Artesa Way in Fort Myers, Florida that was purchased in September 2010. Doc. 43-2, Plaintiff Profile Form, at 2; Doc. 43-3,

---

[1] A full background describing the pending drywall litigation in this District is set forth in the Report and Recommendation (being filed herewith) relating to the motion for partial summary judgment that was filed in all of the Middle District of Florida cases.

Supp. Plaintiff Profile Form, at 3. They allege that the home contains defective drywall [2] which was installed in the property in 2006, when the house was constructed. *Id.* at 2. Plaintiffs began noticing a sulphur-like smell in November or December 2011. Doc. 43-1, Depo. of Vince Russo, at 25-26. Plaintiffs filed suit against the Knauf Defendants in June 2018. Defendants thus argue the suit is barred by Florida's four-year statute of limitations.

## II. STANDARD

"A party may move for summary judgment, identifying each claim or defense ... on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.*

For issues the movant must prove, the "movant must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party

---

[2] Plaintiffs contend that Defendants' drywall products containing the ink stamp, "KNAUF-TIANJIN CHINA ASTM C36" and are defective, because the off-gas noxious and corrosive chemicals such as hydrogen sulfide and carbon disulfide.

on all of the essential elements of its case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2013) (citation omitted). But for issues the non-movant bears the burden, the movant has two options: (1) point out a lack of evidence to support the nonmoving party's case; or (2) provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (citation omitted). "The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).

At the summary judgment stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002). It may not undertake credibility determinations or weigh the evidence when reviewing the record. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). What's more, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### III. ANALYSIS

**I. Statute of Limitations**

Under Florida law, claims for negligence, property defects, unjust enrichment, breach of warranty, and violation of Florida's Unfair Trade Practices Act are all subject to a four-year statute of limitations. § 95.11(3), Fla. Stat.; *see also Dominguez v. Hayward Indus., Inc.,* 201 So. 3d 100, 101 (Fla. 3d DCA 2015). For purposes of the commencement of the running of the statute of limitations, "[a] cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031.

In the case of a latent defect, the time to file a lawsuit is equitably tolled such that the statute of limitations "runs from the time the defect is discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.11(3)(c). But a plaintiff "need not know the full extent of his injury" to a "legal certainty" for the statute of limitations to commence to run. *Samson v. R.J. Reynolds Tobacco Co.,* No. 96-414, 1997 WL 373475, at *5 (M.D. Fla. June 2, 1997). And while equitable tolling may also exist where a plaintiff is "mislead or lulled into inaction" in some extraordinary way by a defendant, the statute of limitations will not be equitably tolled where a plaintiff cannot show what any defendant "said or did which prevented" the plaintiff from acting on their injury. *Hummer v. Adams Homes of Nw. Fla., Inc.,* No. 8:13-CV1981-T-17AEP, 2014 WL 897083, at *3 (M.D. Fla. Mar. 6, 2014).

Here, the Russos purchased the house at issue in 2010 after the alleged defective drywall was installed in 2006. *See* Doc. 43-3 at 3. In his deposition, Plaintiff Vincent Russo testified as follows.

> **DEFENSE COUNSEL:** And how did you hear of issues with Chinese drywall?
>
> **MR. RUSSO:** Speaking with people at the community pool. We had a smell in the house that we were discussing with our neighbors. We first thought it was the carpet, and some of the neighbors had similar issues, and that's where we learned that there was this Chinese drywall issue in our community.
>
> **DEFENSE COUNSEL:** And that was November of 2011?
>
> **MR. RUSSO:** I'm guessing November/December, 2011.
>
> **DEFENSE COUNSEL:** Okay.
>
> **MR. RUSSO:** Around that time.
>
> **DEFENSE COUNSEL:** And you said you noticed a smell in the house. Can you describe the smell?
>
> **MR. RUSSO:** It's kind of sulfur, like somebody lit a match in the house.
>
> **DEFENSE COUNSEL:** Did you notice that smell when you purchased the property?
>
> **MR. RUSSO:** No.
>
> **DEFENSE COUNSEL:** When did you notice that smell?
>
> **MR. RUSSO:** When we stayed there, I believe, just before the Christmas holidays. So it would have been December of 2011 if recall. When we stayed there for a week or so, then we noticed it.
>
> **DEFENSE COUNSEL:** Okay. And what did your neighbors tell you?

**MR. RUSSO:** That a lot of the homes in the community had defective drywall installed in them, and the smell that we were smelling was associated with that.

**DEFENSE COUNSEL:** I'm guessing the property was constructed as part of a neighborhood development; is that correct?

**MR. RUSSO:** I have no idea how it was constructed.

**DEFENSE COUNSEL:** Do you know if the homes were constructed around the same time period?

**MR. RUSSO:** No.

**DEFENSE COUNSEL:** But some of your neighbors had had problems with Chinese drywall?

**MR. RUSSO:** I wouldn't say neighbors. People in the community.

   * * *

**DEFENSE COUNSEL:** And how did you discover that the property contained Chinese drywall?

**MR. RUSSO:** How did I discover or how was it confirmed; what are you asking?

**DEFENSE COUNSEL:** The first, how did you discover?

**MR. RUSSO:** How did I notice that it was Chinese drywall?

**DEFENSE COUNSEL:** Yes.

**MR. RUSSO:** Through the smell and then there was pitting or blackening of some of the copper piping, and we were getting headaches when we stayed there.

**DEFENSE COUNSEL:** And when was this?

**MR. RUSSO:** December of 2011 I believe.

**DEFENSE COUNSEL:** So around the same time that you communicated with some of the people in the community?

**MR. RUSSO:** We communicated with people in the community after, well, very close to the same time.

**DEFENSE COUNSEL:** Okay. And when was Chinese drywall confirmed on the property?

**MR. RUSSO:** I believe 2012, March break.

**DEFENSE COUNSEL:** But you suspected that it could have Chinese drywall prior to this time?

**MR. RUSSO:** Yes, due to the smell and everything we were experiencing.

Doc. 43-1 at 25-28.

Despite noticing these problems no later than March 2012, Plaintiffs did not file suit until June 2016. Plaintiffs were on notice of a potential invasion of their legal rights more than four years before filing suit, and their claims are therefore barred by the statute of limitations.

Plaintiffs' response is generic with respect to the six cases where the statute of limitations has been raised. They acknowledge that the four-year limitation applies to the claims in suit and do not dispute Defendants' factual recitation. They do, however, assert that Defendants are "estopped" from raising the limitations defense based on a failure to provide post-sale notice or warnings.

This issue arose during the MDL proceedings and was squarely addressed by the presiding District Judge. *In Re: Chinese-Manufactured Drywall Products Liability*

*Litigation*, Civil Action MDL 2047, No. 14-2722, 2020 WL 2488240, at *10 (E.D. La. 2020):

> Plaintiffs collectively contend that Defendants should be estopped from arguing that Plaintiffs were on notice of the defect any earlier than a formal Chinese drywall inspection because Defendants failed to comply with their post-sale duty to warn. Indeed, Florida law recognizes that in some circumstances, manufacturers have a post-sale duty to warn downstream consumers of defects in their products, even after the goods have left the manufacturer's possession or control. [citations omitted] . . .
>
> This duty is premised on the Restatement (Third) of Torts, which provides that a post-sale duty to warn is triggered when "[a] reasonable person in the seller's position would provide a warning after the time of sale if . . . the seller knows or reasonable should have known that the product poses a substantial risk of harm to persons." Restatement (Third) of Torts, § 10(b)(1).
>
> Even assuming, arguendo, that a post-sale duty to warn does exist, the Restatement (Third) of Torts clarifies that a post-sale duty to warn applies only when "a warning can be effectively communicated to and acted on by those to whom a warning might be provided." Restatement (Third) of Torts § 10(b)(3). In overseeing this MDL, the Court has become intimately familiar with the distribution process that brought Knauf manufactured drywall into this country. Due to the size and geographic scope of the market and the complexity of the distribution network, the Court concludes that it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty to warn may have been owed.

Judge Fallon's reasoning and his analysis of Florida law as it applies in these cases is sound and persuasive. Estoppel does not serve to avoid the statute of limitations.

The Russos also make reference to the Consumer Products Safety Commission and assert that Defendants failed to report and "fraudulently concealed" the product defects. However, they fail to provide any connection between any violation of the

Consumer Product Safety Act and their common law claims in this case. Plaintiffs have not shown that application of Florida's statute of limitations principles are affected by possible federal regulatory matters.

## II.     Subsequent Purchaser

This is one of ten cases in which Defendants argue that Plaintiff's damage claims are barred by what Defendants label the subsequent purchaser doctrine. In essence, Defendants argue that Florida law does not allow a claim for damages to property to be asserted by a subsequent purchaser unless there has been an express assignment of any such claim from the original purchaser.

As argued by Defendants in each of the ten cases:

> Florida law provides that a cause of action arising out of injury to property is personal to the owner and a subsequent purchaser may not pursue the cause of action without a specific assignment of that cause of action. Where the cause of action arises out of an injury to property, that action is personal to the owner of the property and a party who subsequently takes title to the property, without receiving an assignment of that cause of action, may not pursue that cause of action. … In order to pursue a cause of action the subsequent purchaser of the property must allege that they became owner of the property after the damage was done and "that by assignment, he became possessed of all rights and causes of action which the original owners possessed." *Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 496 (Fla. 3d DCA 1994) (citing *Selfridge v. Allstate Ins.*, 219 So. 2d 127, 128 (Fla. 1969); and quoting *State Road Dep't. v. Bender*, 2 So. 2d 298 (Fla. 1941)). "When an assignment of interests is involved, the plaintiff must allege a valid assignment of that cause of action." *Llano Fin. Grp., LLC v. Ammons*, No. 3:16-CV627/MCR/CJK, 2017 WL 7596921, at *2 (N.D. Fla. June 15, 2017) (citing *Ginsberg*, 645 So. 2d at 496).

Plaintiffs respond that there is no such general doctrine and that the continuing nature of the damages from the defective drywall would preclude any application of such a doctrine.

Recently, District Judge Robert N. Scola of the Southern District of Florida, presiding over a number of cases similar to these, held "As a threshold matter, Florida does not appear to have a "subsequent purchaser rule" as the Defendants suggest, Subsequent purchasers are allowed to assert claims in a number of contexts." *Karpel v. Knauf Gips KG*, 2022 WL 4366946 at *2 (S.D. Fla. Sept. 21, 2022). Notably, neither party favored this Court with any reference to Judge Scola's ruling as supplemental authority.

In the cases in this Court, Defendants argue the subsequent purchaser doctrine generally, without regard to the particular legal theories being pursued by Plaintiffs. Due to this presentation, the Court declines to undertake its own ex ante analysis of each of the theories of the case. For present purposes, it is sufficient to note agreement with Judge Scola's overall conclusion and to point out that Defendants have overstated the extent and potential application of the limited principles set forth in the cases they have cited.

The principal case cited by Defendants is *Ginsberg v. Lennar Florida Holdings, Inc.,* 645 So.2d 490 (Fla. 3d DCA 1994). As discussed by Judge Scola, however, "*Ginsberg* was decided on the basis of what the Florida Supreme Court now

recognizes to be a flawed application of the economic loss rule." *Id.* at *6-7. The case accordingly is not good authority supporting the assertion of some overarching rule in Florida barring claims by subsequent purchasers of goods and real property.

The absence of a general doctrine barring claims by subsequent purchasers, the somewhat fluid nature of the Plaintiffs' claims and the variance in circumstances of each property at issue mean that treatment of this issue on summary judgment is inappropriate. The motion should be **DENIED** as to this issue.

## CONCLUSION

In accordance with the foregoing, it is respectfully recommended that the motion for summary judgment (Doc. 43) be **GRANTED** and that the Clerk be **DIRECTED** to enter a final judgment dismissing the case and to close the file.

## NOTICE

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on October 19, 2022.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record